# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JAVON MARSH,                )
                           )
            Petitioner,     )
                           )
    v.                      )        Case No. 4:19-cv-00461-SEP
                           )
STANLEY PAYNE,              )
                           )
            Respondent.     )

## MEMORANDUM AND ORDER

Before the Court is Missouri state prisoner Javon Marsh's *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Doc. [1].  For the reasons set forth below, the Petition is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an inmate at the Eastern Reception Diagnostic and Correctional Center in Bonne Terre, Missouri.  Doc. [1] at 1.  On March 16, 2011, Petitioner was convicted of one count of first-degree murder, one count of first-degree robbery, and two counts of armed criminal action.  *Id.*; Doc. [7] at 1.  The Circuit Court of St. Louis City sentenced Petitioner to life in prison without the possibility of parole on the first-degree murder count, and twenty years for his remaining sentences, to run concurrently.  Doc. [1] at 1; Doc. [7] at 1.

On November 4, 2009, Patrick Hines —also known as Pat G— was near a vacant house on Emma Street in St. Louis City.  Doc. [7] at 2 (citing Doc. [7-10] at 9-10).  Petitioner and an unidentified person were sitting on the porch or steps of the vacant house.  *Id.*  Around 4:45 PM, Petitioner and Pat G began conversing and about 15 minutes later, that conversation became an argument.  *Id.*  Petitioner then produced a revolver, after which Pat G backed away with his hands raised.  *Id.*  Petitioner pointed the gun at Pat G's chest and shot him and said that he "should shoot [him] in the head."  *Id.*  Petitioner took marijuana and money from the victim's front pants pockets, and then ran away with the unknown third person.  *Id.*

On direct appeal, Petitioner claimed that there was insufficient evidence to convict him of murder in the first degree and that the trial court committed plain error by allowing the

1

prosecutor to repeatedly define "deliberation" for the jurors in a manner that did not accord with the jury instructions.  Doc. [7-5] at 24-25.  The Missouri Court of Appeals affirmed the conviction in all respects.  Doc. [7-7] at 1-2.  Petitioner then filed a *pro se* Rule 29.15 motion and a subsequent amended Rule 29.15 motion after counsel entered the case.  Doc. [7-8] at 8, 23, 27. Petitioner's amended Rule 29.15 motion sought relief on grounds that he was denied effective assistance of trial counsel because counsel failed to (1) object to and properly preserve for appeal the State's use of an improper definition of "deliberation" throughout the trial; (2) adequately impeach State-witness Doyle Brush regarding the caliber of the handgun used to shoot the decedent; and (3) object and request relief before the State injected prejudicial testimony.  *Id*. at 31-32.  The Circuit Court of St. Louis City denied Petitioner's requests for an evidentiary hearing and his Rule 29.15 motion.  *Id*. at 68.  Petitioner appealed the motion court's denial of his claims for post-conviction relief, again alleging that his trial counsel was ineffective.  Doc. [7-11].  The Missouri Court of Appeals affirmed the motion court's decision.  *Id*. at 1.

Petitioner then filed his *pro se* petition in the instant action, asserting five grounds for relief:  (1) the trial court erred when it overruled his motion for judgment of acquittal as to the count of first-degree murder because there was insufficient evidence to support that Petitioner, beyond a reasonable doubt, deliberated before he shot the decedent; (2) the trial court erred in allowing the prosecutor to define "deliberation" not in accord with the jury instructions; (3) Petitioner did not receive effective assistance of counsel, as evidenced by his attorney's failure to object and preserve for appeal the State's use of an improper definition of "deliberation" during the trial; (4) Petitioner was further denied effective assistance of counsel because his attorney failed to adequately impeach Mr. Brush regarding the caliber of the handgun used to shoot the decedent; and (5) Petitioner was also denied effective assistance of counsel when his attorney failed to object and request relief before the State injected prejudicial testimony.  Doc. [1] at 7-8.

### LEGAL STANDARD FOR REVIEWING HABEAS CORPUS CLAIMS ON THE MERITS

A federal judge may issue a writ of habeas corpus freeing a state prisoner if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The judge must not issue a writ, however, if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977).

2

"Federal habeas review exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by [the Antiterrorism and Effective Death Penalty Act (AEDPA)] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court shall not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "[A] state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (citing 28 U.S.C. § 2254(e)(1)) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence).

## DISCUSSION

As discussed above, Petitioner asserts five grounds for relief in his Petition. The Court will address each of Plaintiff's claims in turn, and Grounds three through five together, as those Grounds assert ineffective assistance of counsel claims.

## I. <u>Ground I for insufficient evidence is denied.</u>

Petitioner's first ground argues that there was insufficient evidence to support the jury finding beyond a reasonable doubt that Petitioner deliberated before he shot and killed Pat G.

Doc. [1] at 8.  Specifically, he states that the eyewitness testimony demonstrated only that the witness saw the gun being raised seconds before the decedent was shot and did not establish that Petitioner planned to shoot the decedent or otherwise reflected on killing him.  *Id.*

For sufficient evidence to support a criminal conviction, the Fourteenth Amendment's Due Process clause requires "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."  *Jackson v. Virginia*, 443 U.S. 307, 316 (1979).  When a habeas petitioner challenges his conviction on the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972) *overruled on other grounds in Ramos v. Louisiana*, 140 S. Ct. 1390 (2020)).  It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.*  "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'"  *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319); *see also United States v. Whitlow*, 815 F.3d 430, 435 (8th Cir. 2016) (explaining that reviewing courts do "not reweigh the evidence or assess the credibility of witnesses") (citing *United States v. Dugan*, 238 F.3d 1041, 1044-45 (8th Cir. 2001)).

Once a habeas petitioner "has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution."  *Jackson*, 443 U.S. at 319.  "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."  *Coleman*, 566 U.S. at 655 (quoting *Jackson*, 433 U.S. at 324 n.16) (citation omitted).  Where the jury "was convinced," as they were here, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality."  *Id.* at 656; *United States v. Manning*, 738 F.3d 937, 944-45 (8th Cir. 2014).

Further, when "the federal courts review a state-court ruling under the constraints imposed by AEDPA, the federal court must accord an additional and independent, high standard

4

of deference." *White v. Wheeler*, 577 U.S. 73, 78 (2015) (quotation marks and citation omitted). Under that "twice-deferential" standard of review, a "state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)) (quotation marks and citation omitted); *see also Coleman*, 566 U.S. at 651 ("We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."); *Nash v. Russell*, 807 F.3d 892, 897 (8th Cir. 2015) (applying *Jackson*'s "narrow standard of review," explaining that, under AEDPA, a court "may grant relief only if [it] find[s] the [state court's] conclusion that the evidence satisfied the *Jackson* sufficiency of the evidence standard both incorrect and unreasonable" and rejecting a habeas challenge to the sufficiency of the evidence) (quotation marks and citation omitted).

Here, Petitioner made the same argument on direct appeal that the evidence presented at trial was insufficient to support a finding that he, beyond a reasonable doubt, deliberated before he shot the decedent. Doc. [1] at 8. The Missouri Court of Appeals rejected the argument, stating:

> In his first point, the defendant claims the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence. He asserts the evidence was insufficient to support his conviction for first-degree murder because the State failed to adduce evidence to support the conclusion, beyond a reasonable doubt, that he deliberated before he shot the victim once.
>
> We review a challenge to the sufficiency of the evidence to determine if a reasonable juror had enough evidence to find the defendant guilty beyond a reasonable doubt. We view the evidence and inferences favorable to the state and disregard contrary evidence and inferences.
>
> A person commits first degree murder by knowingly causing the death of another person after deliberation upon the matter. Deliberation means cool reflection for any length of time no matter how brief. Jurors may infer deliberation from the circumstances surrounding the murder. The record contains ample evidence that the defendant deliberated before shooting the victim even though the defendant fired only one shot.
>
> A neighbor testified that he was directly across the street and observed the defendant and an unknown third person talking with the victim. About 15 minutes later, the neighbor heard the defendant, voice raised, arguing with the victim. The neighbor looked up when he heard the argument. He saw the defendant produce a revolver, and saw the victim back away with his hands raised. The defendant pointed the gun at the victim's chest, and shot him. The neighbor then heard the defendant say to the victim, "I should shoot you in the head." The neighbor

observed the defendant take marijuana and money from the victim's front pants pockets, and then run away with the unknown third person. A second neighbor also observed the defendant going through the victim's pockets, and this neighbor testified that the defendant and the third man turned the victim over onto his stomach when they rummaged through his pockets. The medical examiner testified that the bullet entered the victim's chest on the left side, traveled through the victim's heart, ricocheted off his spinal column causing damage to the spinal cord, and then traveled downward and to the right, coming to rest in his chest cavity. While the defendant argues that he fired only once, he nonetheless pointed the gun directly at the victim's chest as the victim raised his hands and backed away, and fired a fatal shot into the victim's heart.

We conclude that the evidence was sufficient to allow a reasonable juror to find that the defendant deliberated before he shot the victim. We deny the defendant's first point.

Doc. [7-7] at 2-3 (internal case citations, quotations, and alterations omitted).

The Missouri Court of Appeals correctly applied the standard of review articulated in *Jackson*, and, upon review of the record, the Court finds that the factual findings cited by the state court are well supported therein. Mr. Brush testified at trial that Petitioner had an argument with Pat G, after which Petitioner shot him in the chest. Doc. [7-2] at 107-10, 113-15. After firing the shot, Petitioner told Pat G that he "should shoot [him] in the head." *Id.* at 113, 139. Viewing the evidence in the light most favorable to the prosecution, *Jackson*, 443 U.S. at 319, and applying the doubly-deferential standard of review under the AEDPA, *White*, 577 U.S. at 78, the Court concludes that the Court of Appeals' determination that sufficient evidence supported Petitioner's conviction for first-degree murder was not objectively unreasonable. *Parker*, 567 U.S. at 43. Indeed, this Court may overturn a jury's verdict only if the finding of guilt "was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656. On review of the record, the Court cannot conclude that situation occurred here. Accordingly, Petitioner's Ground 1 is denied.

**II.    Ground 2 for improper definition of an element is denied.**

In Ground 2, Petitioner claims that the trial court plainly erred by allowing the prosecutor to improperly define one of the first-degree murder elements. Doc. [1] at 8. During closing arguments, the prosecutor repeatedly defined "deliberation" to be synonymous with "choice," contrary to the jury instructions. *Id*. When a litigant fails to object at trial to an error, this "leaves the appellate court with the power to notice only plain error." *Dixon v. Crete Medical Clinic, P.C.*, 498 F.3d 837, 849 (8th Cir. 2007) (quoting *Rahn v. Hawkins*, 464 F.3d 813, 819 (8th Cir. 2006)). "Under plain error review, an error not called to the trial court's attention by a

contemporaneous objection will be grounds for reversal only if the error prejudiced the substantial rights of a party and would 'seriously affect the fairness, integrity or public reputation of judicial proceedings' if left uncorrected." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). A prosecutor's improper closing argument violates a defendant's due process rights when the prosecutor's statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Sublett v. Dormire*, 217 F.3d 598, 600 (8th Cir. 2000) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). "[T]he prosecutor's closing argument" must be "so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *Id.* (quoting *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999)). Furthermore, "[a] jury is presumed to follow its instructions," and not those of the prosecutor. *United States v. Thomas*, 877 F.3d 1077, 1079 (8th Cir. 2017) (quoting *United State v. Myers*, 503 F.3d 676, 683 (8th Cir. 2007)); *see also Williams v. Groose*, 77 F.3d 259, 262 (8th Cir. 1996) (citing *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995)) (holding that prosecutor's remarks during voir dire were remedied by jury instructions that properly defined "reasonable doubt").

Additionally, when a party procedurally defaults on a claim, habeas courts are to apply the more onerous "cause-and-prejudice" standard of review articulated in *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977). *See Clark v. Bertsch*, 780 F.3d 873, 876 (8th Cir. 2015) (quoting *Hayes v. Lockhart*, 766 F.2d 1247, 1253 (8th Cir. 1985)). A party's procedural default is not excused by the fact that a state court rendered a merits decision on the defaulted claim, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Harris v. Reed*, 489 U.S. 255, 265 n.10 (1989).

Petitioner claims that it was plain error for the trial court to allow the State to equate "deliberation" with "choice" for purposes of the crime of first-degree murder. Doc. [1] at 8. At trial, Petitioner failed to object to the prosecutor's improper definition. Doc. [7-7] at 3-6. On direct appeal, the Missouri Court of Appeals noted that Petitioner failed to preserve his claim, but nonetheless reviewed it for plain error and denied it as follows:

> In his second point, the defendant claims the trial court plainly erred in allowing the State to repeatedly define for the jurors the term "deliberation" as synonymous with "choice." The defendant did not object to the prosecutor's characterization during closing argument that "deliberation" means making a choice. Consequently, this claim is not preserved for our review, and we can review it only for plain error.

7

Plain error requires a finding of manifest injustice or a miscarriage of justice. We will consider plain-error review of a closing argument only if "there is a sound, substantial manifestation, a strong, clear showing, that injustice or miscarriage of justice will result" if we do not grant relief. We will reverse a conviction due to an improper closing argument when the argument had a decisive effect on the jury's determination. The defendant bears the burden to show a decisive effect. Rarely will a reviewing court grant plain-error relief for a claim related to closing argument, absent an objection, because counsel may have made a strategic decision not to object. We consider the entire record when interpreting a closing argument, not an isolated segment.

In the context of the State's entire closing argument, the prosecutor defined "deliberation" in accord with the jury instruction five, based on MAI-CR3d 314.02. But in the process of arguing the deliberation element, he repeatedly equated the terms "deliberation" and "choice." Although the term "choice" is not used in the instruction, we conclude that the prosecutor's use of this term in closing argument did not have a decisive effect on the jury's determination and did not result in manifest injustice or miscarriage of justice, especially given the ample evidence of deliberation. In *State v. Mosley*, this Court rejected a virtually identical claim requesting plain-error relief when the State argued in closing that the defendant made choices in committing first-degree murder. Furthermore, we presume the jury followed the court's instruction, which properly defined the term "deliberation." We caution the prosecutor from engaging in such gratuitous argument. The State should leave the definition of elements to the trial court.

. . .

Furthermore, the strength of the evidence of deliberation precludes a finding of manifest injustice. We deny the defendant's second point.

*Id*. at 4-6 (citations and quotations omitted).

Petitioner procedurally defaulted his claim that the prosecutor's improper definition prejudiced the outcome of his trial.  Because Petitioner offers no justification for failing to object at trial to the prosecutor's statements, Petitioner fails to satisfy the "cause" prong of the *Sykes* test.  Additionally, in light of the testimony against Petitioner at trial, there is no concern that Petitioner was prejudiced by the prosecutor's improper definition.  Ultimately, any issues arising from the prosecutor's improper definition of "deliberation" were cured by the jury instruction. Whatever problems could have arisen from the prosecutor's remarks during closing arguments, those issues were not such that any reasonable trial judge would have *sua sponte* declared a mistrial.  The Court denies Ground 2.

III.    <u>**Grounds 3, 4, and 5 for ineffective assistance of trial counsel are denied.**</u>

Petitioner raises three claims that his trial counsel provided him with ineffective assistance of counsel.  Doc. [1] at 7.  First, Petitioner argues that his attorney failed to object to and preserve for appeal the State's use of an improper definition of "deliberation" during the trial.  *Id*.  Second, Petitioner claims that his attorney failed to adequately impeach witness Doyle Brush regarding the caliber of the handgun used to shoot Pat G.  *Id*.  And third, Petitioner contends that his attorney failed to object and request relief before the State injected "prejudicial testimony that the shooting was because of drugs."  *Id*.  Petitioner raised these claims in his post-conviction appeal, and the Missouri Court of Appeals denied them on their merits.  Doc. [7-11] at 3-6.  After review of the record, the Court finds that the Missouri court's resolution of Petitioner's ineffective assistance claims reflects a reasonable application of federal law and is entitled to deference.  *See White*, 577 U.S. at 78.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To demonstrate ineffective assistance of counsel, Petitioner must show that:  (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense."  *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014); *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).  To establish deficient performance, Petitioner must demonstrate that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [Petitioner] by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy."  *Id.* at 689 (citation and internal quotation marks omitted).  To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 669.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that, "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review."  *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).  It is not sufficient for Petitioner to "show that he would

9

have satisfied *Strickland*'s test if his claim were being analyzed in the first instance[.]" *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699. "This standard was meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" *Williams*, 695 F.3d at 831 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). "If the state court reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions, then federal review under AEDPA is at an end." *Id.* at 832 (internal quotation marks omitted).

The motion court found that it was reasonable for Petitioner's trial attorney not to object to, and preserve for appeal, the State's use of an improper definition of "deliberation" for the crime of murder in the first degree. Doc. [7-8] at 73-74. The Missouri Court of Appeals, applying *Strickland*, affirmed the motion court's decision:

> In his first point on appeal, Movant argues the court clearly erred in denying his claim that counsel failed to timely object when the prosecutor misstated the definitions of "deliberation" and of second-degree murder during argument. He claims these misstatements of law had the effect of lowering the State's burden of proof on the first-degree murder count and prevented the jury from considering the lesser-included offense of murder in the second degree. The prosecutor's alleged misconduct was raised on direct appeal as a claim of plain error, which was rejected because the jury had been properly instructed on the correct definition of deliberation and there was ample evidence of deliberation; thus, there was no miscarriage of justice or manifest injustice warranting reversal for plain error. Though the post-conviction standard of prejudice is less rigorous than the plain error standard, that theoretical difference . . . will seldom cause a court to grant post-conviction relief after it has denied relief on direct appeal. This is not one of those rare cases in which application of the two tests will produce different results. The jury was given the proper definition of deliberation in the instructions and the correct elements of murder in the second degree in the verdict-director. The jury was also instructed not to consider the arguments of counsel as evidence and to follow the instructions as given to them *by the court*. The prosecutor himself pointed out to the jury that the law in the instructions might be different than what they expected, but they must follow them as written. Thus, any deficiencies in the State's argument were corrected by the trial court's instructions to the jury, and there was ample evidence to support a finding of deliberation under the correct definition. Movant can no more show a reasonable probability of a different outcome had counsel objected to the State's misstatements than he could show on appeal a manifest injustice or miscarriage of justice resulting from those misstatements. Thus, it was not clear error to deny this claim without an evidentiary hearing.
>
> Point I is denied.

Doc. [7-11] at 3 (internal case citations, quotations, and alterations omitted).

As for Petitioner's counsel's decision to not impeach Mr. Brush regarding the caliber of the gun used to murder Pat G., the motion court found this decision to have been reasonable. Doc. [7-8] at 74-75.  Applying *Strickland*, the Missouri Court of Appeals affirmed the motion court's decision and denied Petitioner's claim that his defense counsel was constitutionally deficient:

> In his second point on appeal, Movant argues the motion court clearly erred in denying his claim that counsel failed to adequately impeach a State's witness about the particular type of revolver the witness saw Movant use to shoot the victim. According to Movant's allegations, the witness said in deposition that the gun looked like a ".32" and when asked to clarify, said "it was a revolver." Then at trial, the witness described the gun as "a revolver," "either a .42 or a .38." Movant argues that this discrepancy in the gun's caliber demonstrated that this witness's testimony was unreliable and, because there was insufficient other credible evidence connecting Movant to the shooting, there is a reasonable probability he would have been acquitted had the witness been impeached with that discrepancy.
>
> The record conclusively refutes this claim. This witness's credibility *was* challenged by counsel for a much more substantial reason than a minor difference in which caliber the witness though the gun was. Counsel cross-examined this witness about the fact that initially he did not identify the shooter by name and about how his story changed over time. Counsel then argued to the jury that this created reasonable doubt. We fail to see how pointing out a minor inconsistency in one irrelevant detail about the gun would have changed the jury's assessment of this witness's credibility. Counsel's failure to impeach on this detail had no plausible effect on the outcome, and therefore the trial court did not clearly err in denying this claim without an evidentiary hearing.
> Point II is denied.

Doc. [7-11] at 4.

Finally, the motion court also denied Petitioner's claim that his counsel should have objected and requested relief before the State injected prejudicial testimony.  Doc. [7-8] at 75-76. The Missouri Court of Appeals again applied *Strickland* and denied that claim:

> In his third point on appeal, Movant argues that the trial court clearly erred in denying his claim that counsel failed to object and request a mistrial "when the State improperly injected the prejudicial testimony that the shooting was because of drugs." Again the record conclusively refutes this claim. Contrary to Movant's characterization, the prosecutor did not improperly inject this testimony. The witness volunteered it after being questioned about the argument he overheard before he saw Movant shoot the victim:
> Q: All right. Could you hear what was being said at that point?

A: I heard some but not too much. I wasn't really—well, I wished I wasn't there. But I did hear some.

Q: Okay.

A: I don't know what they were arguing about or nothing. I heard that it was over some drugs, but I don't know.

DEFENSE COUNSEL: Objection.

PROSECUTOR: Hold on. I don't want you to talk about what you may have heard.

THE WITNESS: Okay.

PROSECUTOR: You know, second, third-hand from the neighborhood news.

THE WITNESS: Okay.

PROSECTUOR I just want to know when you heard what you said sounded like an argument, you heard voices, a voice or more than one voice raised; is that right?

THE COURT: I didn't want to interrupt [the prosecutor], however, before the witness answered, [defense counsel] had, I couldn't hear, did you make an objection or not?

DEFENSE COUNSEL: I began to, Judge, but [the prosecutor] remedied it before I needed to finish.

    Movant also mischaracterizes the nature of counsel's actions, claiming counsel objected "too late" and without any grounds. Counsel could not have objected any earlier because there was not an objectionable question posed by the prosecutor, and the objection came immediately upon the volunteered hearsay statement. There was not a chance to state the grounds because the prosecutor immediately admonished the witness himself, which remedied the problem. Rather than request a mistrial as Movant proposes—a drastic measure that was unlikely at that point to be granted—counsel made the strategic decision to withdraw the objection and move on.

    Moreover, Movant's assertion of prejudice that "but for counsel's failure, the jury would not have heard that the shooting was about drugs" is patently refuted by the record. This same witness testified, without objection, that the victim was the neighborhood marijuana dealer and that after Movant shot the victim, Movant took "money and weed" out of the victim's pocket. Thus, Movant's argument that the above hearsay statement provided the only evidence suggesting the shooting was because of drugs—and thus the only evidence of deliberation—is wholly unfounded. The trial court did not clearly err in denying this claim without an evidentiary hearing.

    Point III is denied.

Doc. [7-11] at 4-5 (alterations in original).

    This Court must indulge a "strong presumption" that defense counsel's conduct fell within the range of reasonable representation. *Strickland*, 466 U.S. at 689. After reviewing the relevant portions of the record with that standard in mind, the Court finds that it contains ample support for the conclusions of the Missouri Court of Appeals. Petitioner's counsel's decision to

not object to the State's proffered definition of "deliberation" did not prejudice Petitioner, as the definition was corrected by the trial court's instructions to the jury.  Doc. [7-4] at 82. Considering the presumption under Missouri law that a jury followed the trial judge's instructions and not those of the prosecutor, *Strickland*'s "strong presumption" of reasonable representation applies with even greater force.  *State v. Dominguez-Rodriguez*, 471 S.W.3d 337, 344 (Mo. Ct. App. 2015) ("It is well-established the jurors are presumed to follow the instructions provided.") (quoting *State v. McFadden*, 391 S.W.3d 408, 424 (Mo. banc 2013)). Additionally, Petitioner's trial attorney's decision to object only to more serious deficiencies in Mr. Brush's testimony and not the inconsequential detail of the caliber of gun used was certainly reasonable representation under *Strickland*.  Finally, Counsel provided adequate assistance to Petitioner at trial when she immediately objected to Mr. Brush's hearsay statement regarding the drug-related nature of the murder.  This is in addition to the fact that Mr. Brush later testified from personal knowledge that there was a nexus between the murder and drugs, removing the allegedly prejudicial effect of Mr. Brush's hearsay statement.

Petitioner has not shown that his attorney's performance was deficient, nor that the outcome of his case would have been affected in any meaningful way if his attorney had objected to the State's improper definition of "deliberation," objected quicker to Mr. Brush's prejudicial statements regarding the drug-related nature of the murder, and cross-examined Mr. Brush about the type of weapon used to commit the murder.  On this record, the Court cannot say that the Missouri court applied either the performance or the prejudice prong of *Strickland* unreasonably; nor was its decision an "unreasonable determination of the facts in light of the evidence presented in state court."  *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010); 28 U.S.C. § 2254(d).  Accordingly, the Court will deny habeas relief on Petitioner's ineffective assistance claims.  *See* Doc. [1] at 7.

## CONCLUSION

For the foregoing reasons, Petitioner is not entitled to federal habeas relief.  Under 28 U.S.C. § 2253(c)(1)(A), an appeal may not be taken from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability.  To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).  "A substantial showing is a showing that issues are debatable among reasonable

jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). Here, reasonable jurists could not differ on Petitioner's claim; therefore, the Court will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue. 28 U.S.C. § 2253.

Dated this 31st day of March, 2022.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE